UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY HOLLAND, SR.,

     Plaintiff,

v.

MADISON HEIGHTS POLICE
DEPARTMENT,
OFFICER HEINRICH, and
OFFICER RANDOLPH,

     Defendants.

Case No. 21-10629
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER
OVERRULING HOLLAND'S OBJECTIONS [26, 28, 31],
ADOPTING REPORT AND RECOMMENDATIONS [20, 23, 30],
GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS [13], AND DENYING HOLLAND'S MOTIONS TO AMEND
THE COMPLAINT [21, 25]**

---

On February 14, 2018, Cory Holland, Sr. was on his way to therapy in an Uber
when the Uber collided with another vehicle. After calling 911, officers from the
Madison Heights Police Department (presumably including Officers Heinrich and
Randolph) arrived at the scene of the accident. Holland was immediately transported
to the hospital. He says that while at the hospital, Heinrich visited him and started
asking him questions. But because Holland was verbally unresponsive, Heinrich then
looked through his coat pockets. According to Holland, the items in his coat pocket
indicated he had sued police officers before, so Heinrich then became unfriendly
toward him. Holland says Heinrich "retaliated" against him by falsely stating on the

police report that Holland was in the Uber to go to a doctor's appointment for back pain and by telling Holland's doctor at the hospital that Holland was "faking it."

More than three years later, in March 2021, Holland sued the Madison Heights Police Department and Officers Heinrich and Randolph. Though not entirely clear, it seems that Holland's claims are based on the allegedly false police report.

All pretrial matters were referred to Magistrate Judge Elizabeth A. Stafford. In time, Defendants moved for judgment on the pleadings (ECF No. 13), and Magistrate Judge Stafford recommended that the motion be granted (ECF No. 20). Holland then filed two motions to amend his complaint. (ECF Nos. 21, 25.) Magistrate Judge Stafford recommended both be denied. (ECF Nos. 23, 30.) All three recommendations and Holland's objections to each are now before the Court.

For the following reasons, the Court will adopt all three recommendations and dismiss the case.

## I.

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986)

(cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II.

The Court will address the three Reports and Recommendations—one for the motion for judgment on the pleadings and two for the motions to amend the complaint[1]—and Holland's corresponding objections in turn.

### A. Motion for Judgment on the Pleadings

A bit of procedural history is helpful before the Court addresses Holland's objections.

On October 26, 2022, Magistrate Judge Stafford recommended that Defendants' motion for judgment on the pleadings be granted and Holland's complaint be dismissed. (ECF No. 20.) Per the instructions in the Report and Recommendation, the parties had 14 days to file objections. (*Id.* at PageID.216.) And because Holland was served by mail, Federal Rule of Civil Procedure 6(d) provided that three days should be added to the objections period. So his deadline for objections was November 14.

The Court next heard from Holland on October 31, when he filed a motion to amend his complaint (which will be addressed later). (ECF No. 21.) Nothing in that

---

[1] Though a motion to amend the complaint does not typically require a Magistrate Judge to issue a Report and Recommendation, here, Magistrate Judge Stafford opted to do so because denying the motions to amend would functionally result in dismissal of the case.

motion could be construed as an objection to the October 26, 2022 Report and Recommendation. Holland did not point out which portions of the Report and Recommendation he disagreed with or address any of the points made in the Report. He instead merely rearticulated the factual basis for his claims against Defendants.

On November 16—a couple of days after the objection period expired—Holland filed a motion for extension of time to file objections. (ECF No. 24.) But this motion only asked for an extension to respond to a different report and recommendation, one "filed on November 1[5], 2022." (ECF No. 24, PageID.314.) That Report and Recommendation addressed Holland's motion to amend, and not Defendants' motion for judgment on the pleadings. (*See* ECF No. 23.) As such, the Court only gave Holland an extension to object to the November Report and Recommendation. (Nov. 18, 2022 Text Order.)

Inexplicably, on December 27—two months after the Report and Recommendation was issued and almost two weeks after the extended deadline to object to a different Report and Recommendation—Holland filed objections to the October Report and Recommendation on Defendants' motion for judgment on the pleadings. (ECF No. 28.)

These objections are clearly untimely. And Holland knows that the Court did not grant him leave to file late objections to the October Report and Recommendation—and certainly not over a month late. In his objections, he specifically stated, "Plaintiff will now object to the Report and Recommendations, even though the court said ONLY object to [ECF] #23." (ECF No. 28, PageID.388.)

4

But that is not how courts work in general nor is it how this Court is going to manage this case. Holland is well aware of the importance of filing deadlines, having brought several cases in federal court, many of which are in this District. So he is aware that a party must ask for an extension before the deadline passes. Indeed, he has successfully asked for extensions in this very case. And it is not sufficient for Holland to assert that he had a "medical emergency" as explanation for why he did not timely object. (ECF No. 28, PageID.388.) Holland gave the Court little detail as to what prevented him  from at least asking for an extension. The Court also has doubts about whether a medical emergency actually caused Holland's delayed objections as it did not prevent him from filing three motions and a set of objections in this case during the relevant time.

So Holland's objections are untimely and thus, he has waived review of the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

But even if the Court were to consider Holland's objections, they are without merit. Holland merely writes one sentence in support of each of his three objections. In one, he states that "he still object[s] to his case being completely dismissed and should be allowed to Amend his complaint." (ECF No. 28, PageID.388.) In others, he suggests that "new evidence" clarifies which of his constitutional rights were violated and the identity of the perpetrator, though he also states that he cannot "provide that court the evidence due to his disabilities." (*Id.*) These are not specific objections to the Magistrate Judge's findings. Instead, they explain ways Holland can correct the deficiencies in his complaint. So they are better addressed in the context of Holland's

motions to amend his complaint rather than as objections to the Report and Recommendation on Defendants' motion for judgment on the pleadings.

So the Court will adopt the Magistrate Judge's recommendation (ECF No. 20) and grant Defendants' motion for judgment on the pleadings (ECF No. 13).

### B. First Motion to Amend Complaint

Magistrate Judge Stafford recommends that the Court deny Holland's first motion to amend his complaint, which was filed shortly after she recommended granting Defendants' motion for judgment on the pleadings. (ECF No. 23.) After reviewing the motion and Holland's objections, the Court agrees that it would be futile to allow Holland to amend his complaint. *See Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 329 (6th Cir. 2020) (providing that a motion to amend is futile "where a proposed amendment would not survive a motion to dismiss").

The Court notes that Holland must plead a claim based in federal law for his case to survive because federal-question jurisdiction is the only basis for subject-matter jurisdiction in this case. So the Court focuses on whether Holland has pled a constitutional claim, as he asserts that is the basis for this Court's jurisdiction.

Holland makes several general allegations against Defendants, accusing them and others of corruption and a conspiracy to retaliate against him. (*See, e.g.*, ECF No. 21, PageID.225 ("[T]here is a lot of information that is in defendants possession, that plaintiff needs to make his case . . . and prove there is a 'policy' of corruption/racism in this police department, this isn't a case about a COUPLE bad apples, it's the whole

department that is corrupt, based on plaintiff and many others he has heard from recently experiences with the Madison heights police department.").)

But the Court will not consider these allegations. The law is clear that a plaintiff must plead a plausible claim before he is entitled to discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). To do this, Holland must allege facts that show what these particular defendants did that was unconstitutional. General claims about corruption, conspiracy, or unconstitutional behavior, especially behavior that was not directed toward Holland, will not be considered. Neither will conclusory allegations devoid of any factual details.

Considering the amended complaint with this lens, Holland fails to plead a claim against Heinrich, Randolph, or the Madison Heights Police Department. Like the original complaint, the crux of Holland's amended complaint is that these officers wrote an allegedly false report following the car crash. (ECF No. 21, PageID.225.) Holland was taken to the hospital following the crash, where a Madison Heights police officer (presumably either Heinrich or Randolph) met him and started asking him questions. (*Id.* at PageID.226.) Holland was unable to answer due to his injuries, and so he says the officer then started reading documents Holland had on his person and in his coat pockets. (*Id.* at PageID.227.) Holland then alleges that the officer became angry at Holland, causing the officer to write a false report about the car accident and to tell Holland's treating doctor at the hospital that he was "faking" it. (*Id.* at PageID.220.) Specifically, Holland claims that it was false for the report to

state that he was "en route to the DR Office for back pain." (*See id.* at PageID.281.) Holland claims that the false report also led to him being denied treatment for these injuries by the Uber driver's insurance company and the Social Security Administration (presumably because these entities found that his back pain preceded the accident). (*Id.* at PageID.227.)

There are several reasons why Holland fails to state a constitutional claim. Start with Holland's incorrect premise that authoring a false police report is a violation of the constitution in and of itself. *See Burns v. Femiani*, 786 F. App'x 375, 380 (3d Cir. 2019) ("[T]he gravamen of Appellants' § 1983 claim is that the Pennsylvania State Troopers filed an incorrect—or, at best, false—police report; such allegations are insufficient to implicate the denial of a constitutional right."); *Jellyman v. City of Worcester*, 354 F. Supp. 3d 95, 100–01 (D. Mass. 2019) ("[T]he filing of a false police report does not, by itself and without further consequences to the plaintiff, violate § 1983."); *Hwang v. Arita*, No. 220CV02904, 2021 WL 4451436, at *1 (Aug. 20, 2021), *report and recommendation adopted*, 2021 WL 4450005 (W.D. Tenn. Sept. 28, 2021) (recommending complaint be dismissed for failure to state a claim where plaintiff alleged that police report following an accident was incorrect and where plaintiff suggested that the police officer's actions influenced his failure to receive medical treatment).

In order to plead a constitutional claim on this basis, a plaintiff must show that he faced a separate constitutional deprivation because of the allegedly false police report. That is where Holland's claims fail. He does not explain how the allegedly

false police report led to a violation of his constitutional rights. *See Simmons v. McKay*, No. 3:18-CV-00121, 2018 WL 1907450, at *5 (M.D. Tenn. Apr. 23, 2018) ("Plaintiff does not . . . allege that he suffered any injury or consequences as a result of this police report. Thus, Plaintiff's allegations against Deputy Duram most closely resemble a claim for defamation, which is not a constitutional violation."). For example, he was not subject to any criminal proceedings because of the police report. *See Sanders v. Jones*, 728 F. App'x 563, 565 (6th Cir. 2018) (considering malicious-prosecution claim based on allegedly false police report). And he does not plausibly allege that he was denied equal protection of the law, as he does not allege any disparate treatment. *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading."). So Holland has not plausibly alleged a violation of the constitution based on the police report.

Holland similarly has not pled a plausible violation based on the officer's "search" of the documents Holland had on him. Holland alleges that the officer came to Holland's hospital room several hours after the accident, where he admittedly was unable to speak to the officer. (ECF No. 21, PageID.220.) Holland says the officer then became frustrated and began looking through the items Holland had on him. (*Id.*) This does not plausibly suggest a violation of the Fourth Amendment. The officer was asking Holland questions because of the car accident and not because of any criminal investigation. The Supreme Court has recognized an exception to the warrant requirement based on law enforcement's "community caretaking functions." "Local

police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). This is exactly what Holland has alleged here—a police officer responded to a car accident and likely needed Holland's information for the accident report. Holland thus does not plausibly plead that the officer who came to his hospital room violated the Constitution by reading documents that were on Holland's person.

Holland also cannot clear the causation hurdle, which is necessary to plead a claim under 42 U.S.C. § 1983. *See Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) ("Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation."). Holland first alleges that the officer's comments led to the hospital prematurely discharging him without treatment. Even if the officer had made comments to the doctor that Holland was "faking" his injuries, the doctor is free to use her own independent judgment to decide whether this was true and when it would be appropriate to discharge Holland. And despite Holland's assertions otherwise, this allegation alone does not plausibly show that the doctor was conspiring with the officers to deny Holland treatment or that the officer exercised any undue influence over the doctor's decision. So the Court will not attribute this injury to either officer when a third party was the true decisionmaker. Further,

Holland has provided the Court with court filings[2] that show he has sued the doctor and the hospital in a separate case before United States District Judge Denise Page Hood. (ECF No. 21, PageID.254.) So the ultimate issue of whether Holland was properly or improperly discharged from the hospital or denied treatment will be decided and remedied in that matter.

Holland also alleges that the false report caused him to be denied coverage for treatment by the Uber driver's insurance company. This also is not a constitutional violation. And similar to the allegations involving the officers and the doctor, Holland has provided court documents showing that he has also separately sued the Uber driver and the driver's insurance company for denial of benefits in state court. (ECF No. 21, PageID.245.) So the issue of whether he had a preexisting injury that bars or reduces his insurance benefits will be decided in that case. And again, the Court will not attribute other parties' conduct, such as their use of a police report to argue a position, to the officers. This is especially true when Holland has a chance to dispute the police report in the context of that case.

Finally, Holland claims he was denied Social Security benefits because of the allegedly false police report. (Also not a constitutional deprivation.) The attached opinion from the Social Security Administration tells a different story. (ECF No. 21, PageID.239.) That opinion specifically states that "[t]he alleged overpayment occurred because the claimant acquired resources above the applicable resource limit,

---

[2] A court may consider public records in the context of a motion to dismiss. *See Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

and he did not timely report those resources to the Social Security Administration." (*Id.*) So it appears that the decision had nothing to do with the police report.

In all, Holland's proposed amended complaint does not state a constitutional claim against these officers. So allowing him to amend would be futile.

Resisting this conclusion, Holland first objects to the Magistrate Judge's conclusion that Holland's first-amended complaint did not meet the standard set out in Federal Rule of Civil Procedure 8 because it is "so disjointed and confused that it obscures what claims are asserted." (ECF No. 23, PageID.308.) Holland states that he was experiencing seizures when he moved to amend the complaint, so he was unable to present a cohesive claim. (ECF No. 26, PageID.356.)

This objection simply acknowledges the Magistrate Judge's finding. And as the Court stated earlier, it understands that Holland's medical issues may make it difficult for him to communicate clearly to the Court. That being said, the Court has tried to explain to Holland what it is looking for in a complaint and what is and is not relevant. If Holland cannot do so in a way that the Court understands, there is little else the Court can do to evaluate his claims. *See Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.").

And even looking past the irrelevant allegations and taking a thorough look at both Holland's original and proposed amended complaint, the Court finds that he has not plausibly pled a constitutional violation. So the Court overrules this objection.

Holland also argues that the State of Michigan has suspended his driver's license due to the medical issues he experienced because of the car accident. Holland says that this suspension is another injury that stems from the allegedly false police report: the false report deprives him of treatment for his injuries, which, in turn, deprives him of the ability to show the state that he has the physical capacity to drive safely. But the Court has already explained that Holland has not plausibly pled that Defendants were responsible for any denial of treatment or benefits. To the extent Holland was wrongfully denied these benefits, he may litigate that issue in the other cases he has in state and federal court. So this objection is also overruled.

Thus, the Court adopts the Magistrate Judge's recommendation to deny Holland's first motion to amend his complaint.

### C. Second Motion to Amend Complaint

After Magistrate Judge Stafford recommended that Holland's first motion to amend the complaint be dismissed, he filed a second motion to amend his complaint. (ECF No. 25.) Magistrate Judge Stafford also recommended denying this motion. (ECF No. 30.)

The recommendation relies on a statute-of-limitations defense that Defendants initially raised in their motion for judgment on the pleadings. After converting the motion for judgment on the pleadings to a motion for summary judgment, Magistrate

13

Judge Stafford found that Holland's claims were barred by the three-year statute of limitations as the car accident took place on February 14, 2018, and Holland did not sue until March 22, 2021. (ECF No. 30, PageID.396.) So his motion to amend the complaint would be futile as the amended claims still concerned the officers' activities on the day of the accident.

Magistrate Judge Stafford also found that Holland was not entitled to equitable tolling due to his incapacitation. She concluded that Holland was aware of his legal rights shortly after the car accident as shown by him initiating a lawsuit against the driver of the car from the accident in October 2018 (as well as other unrelated lawsuits). (ECF No. 30, PageID.398.) As a part of that lawsuit, Holland gave a deposition on July 22, 2019, where he mentions that the police put the wrong information in the police report because he "wasn't going to see no doctor." (ECF No. 13-8, PageID.130.)

The Court agrees that the statute of limitations bars Holland's claims despite his assertions of equitable tolling due to mental incapacity.

Holland first argues that his claim did not accrue until January 2019 when he was made aware of the false police report. Section 1983 claims accrue "when the plaintiff should have known of his injury. . . . This objective inquiry requires us to consider what event should have alerted the average lay person to protect his rights." *Miller v. Cocke Cnty., Tennessee*, No. 21-5585, 2022 WL 103143, at *2 (6th Cir. Jan. 11, 2022) (citing *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)). And because the Court is evaluating evidence outside of the pleadings, it

14

will employ the Rule 56 summary-judgment standard to make this determination. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Perhaps, as suggested by the Magistrate Judge, the officers making the report of the accident should have alerted Holland to obtain the police report. (*See* ECF No. 30, PageID.396.) In response, Holland argues he could not have done so because he was incapacitated. (ECF No. 31, PageID.412.) But Holland "admits in his deposition that he could remember the officer showing up several hours later, what he couldn't remember was the accident itself." (ECF No. 14, PageID.164.) The police officers arriving at the hospital to ask Holland questions after the accident would have alerted "the average lay person to protect his rights." *See Miller*, 2022 WL 103143, at *2. And because the standard for accrual is an objective one, the Court may not consider Holland's specific limitations in obtaining the police report when it determines accrual. So the Court finds that Holland's claims regarding the police report and the events after the accident accrued on the date of the accident, which makes his March 2021 complaint untimely.

The Court next turns to whether Holland was entitled to tolling, and whether that tolling would make his claim timely.

"Just as limitations periods are taken from state law, so are the rules regarding tolling." *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 883 (E.D. Mich. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)); *Johnson v. Memphis Light Gas & Water*

*Div.*, 777 F.3d 838, 845 (6th Cir. 2015) ("Having borrowed the state's statute of limitations for the § 1983 claim, we apply the state's tolling statute, as long as the result is not inconsistent with federal law or policy."). Michigan law provides for tolling the statute of limitations if the plaintiff can show the following three things: 1) that the disability existed when the claim accrued; 2) the disability was continuous; and 3) the plaintiff filed his lawsuit within one year of removal of the disability. *Little v. Presque Isle Cnty.*, 2021 WL 1720838, at *5 (E.D. Mich. Apr. 30, 2021) (applying Michigan tolling statute for mental incapacitation); *see also* Mich. Comp. Laws § 600.5851 ("[I]f the person first entitled to make an entry or bring an action under this act is . . . insane at the time the claim accrues, the person . . . shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run."). In other words, "the plaintiff is permitted a 'year of grace' from the time when the disability is removed in which to file his or her claim." *Gardner v. Burch*, No. 20-cv-11001, 2020 WL 7770877, at *4 (E.D. Mich. Dec. 30, 2020) (quoting *English v. Bousamra*, 9 F. Supp. 2d 803, 808 (W.D. Mich. 1998)).

The Court assumes without deciding that Holland has satisfied the first two prongs. In other words, for purposes of this opinion, the Court assumes that the car accident caused a disability that rendered Holland incapable of bringing suit under Michigan law. But he fails at the third—he cannot show that he filed his lawsuit within one year of removal of the disability. A disability which tolls the statute of limitations under Michigan law is specifically defined as "a condition of mental

derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know[.]" Mich. Comp. Laws § 600.5851(2). Michigan courts have found this to mean an inability to "comprehend simple legal procedures" and where it "was necessary to explain to [plaintiff] matters the ordinary person would understand[.]" *English*, 9 F. Supp. 2d at 809 (quoting *Davidson v. Baker-Vander Veen Constructor Co.*, 192 N.W.2d 312, 313 (Mich. Ct. App. 1971)). So the Court now looks to when the disability caused by the car accident was removed.

Holland's deposition in July 2019 shows he was able to comprehend legal procedures and that he understood matters that an ordinary person would understand. He had no trouble answering the attorney's questions with relevant answers and giving information about his physical health and other cases he was involved in. (*See generally* ECF No. 13-8.) And he was aware of the false police report at that time and indicated that he disputed it. (ECF No. 13-8, PageID.134.) So at the very least, no reasonable jury could find that as of July 2019, Holland could not comprehend his rights or simple legal procedures.

Additional evidence provided by Holland further indicates he was capable of comprehending his rights in 2019. In his response to the motion for judgment on the pleadings, Holland states, "[o]n January 29, 2019 is [w]hen plaintiff was made aware of the false report[.]" (ECF No. 14, PageID.163.) Holland also attaches a February 2019 email between himself (from his personal email) and a representative from Madison Heights with the subject "FOIA form." (ECF No. 14, PageID.172.) The email states that Holland had already submitted a FOIA request for the "911 call" and

discusses Holland's subsequent requests for "body-cams" and "dash cam" footage. (*Id.*) These two pieces of evidence together indicate that after Holland was made aware of the police report, he initiated FOIA requests to the City of Madison Heights. Every reasonable jury would find that, based on that information, Holland was not incapable of understanding his rights or understanding legal proceedings in 2019. In fact, he appears well aware of his legal rights related to this exact situation. So his year-long grace period, which started at the latest in July 2019, could not excuse him for filing his claim in March 2021.

In his objections, Holland states that when he gave his deposition, he did not actually remember the accident. Instead, he says that the hospital gave him information shortly before his deposition that he relied on when answering questions. (ECF No. 31, PageID.414–415.) Even taking this as true, it fails to show that Holland was incapable of understanding his rights or basic legal proceedings at the time of the deposition. In fact, if Holland was able to comprehend information from the hospital and review his claims file in preparation for his deposition (ECF No. 31, PageID.415), it follows  that he was able to understand a lot about the situation at that time. It does not matter that Holland did not have an independent recollection of the details of his hospital stay at the time of his deposition. All that matters is that he was made aware of those details (including by reviewing a claims file), was able to comprehend them, and gave coherent answers to the deposition questions that revealed knowledge of the exact facts at issue in this case.

To be clear, nothing in the Court's ruling, or Magistrate Judge Stafford's recommendation, is meant to suggest that Holland does not have certain disabilities. That is not disputed. The deposition shows that he was using an assistive device and unable to use his voice, and he has submitted medical records indicating he has certain medical restrictions. But that does not mean his disability amounted to him being unable to comprehend his rights or understand simple legal proceedings in the one year before he filed suit. The equitable-tolling bar is simply much higher than what Holland has shown.

Holland also states that he only found out about the alleged illegal search "a few weeks ago, when he viewed video from the scene of the accident" (ECF No. 31, PageID.415.) Yet, more than two months ago, in his first motion to amend his complaint submitted on October 31, Holland stated "plaintiff heard [the officer] going through his personal items, documents on the table/chair[.]" (ECF No. 21, PageID.220.) And it is not clear if Holland was in possession of this video since 2019, when he says his attorney requested it.

Regardless, Holland understood that the officers played some role in the events of the accident (at least enough to initiate a FOIA request). He was not incapable of understanding his rights as of 2019. So Holland had the ability (and almost two years before the three-year limitations window closed) to uncover information related to the search. In other words, even if true that Holland did not know about the details of the search until after he commenced this litigation, it was not because he was unable

to comprehend his rights. His 2019 FOIA request shows the exact opposite. So this assertion also does not make his claims timely.

In all, after reviewing the evidence provided by both parties, the Court finds that any reasonable jury would find that Holland could comprehend his rights as of 2019. That was more than a year before he commenced this action, so his claims are not subject to equitable tolling. And, as previously discussed, even if these claims pertaining to the search and police report were deemed timely, they still fail to allege a constitutional violation for the reasons stated. The Court will therefore adopt the Magistrate Judge's recommendation and deny Holland's second motion to amend his complaint for futility.

### D. Injunction for Vexatious Litigation

One final note. Magistrate Judge Stafford also recommended that Holland be enjoined from filing lawsuits in this District without obtaining leave of court. (ECF No. 30, PageID.401.)

The Court certainly understands this position, but it declines to enjoin Holland at this time. The Court has stated before that Holland's filings are difficult to understand and that he often makes bare allegations of conspiracy and corruption that are unsubstantiated by any factual allegations. His submissions often talk about individuals that are not named parties in the litigation at issue. All of this makes it difficult and time-consuming to understand what Holland's claims are.

Setting aside these deficiencies, though, Holland is not a vexatious litigant. He has filed many lawsuits in this District, but they typically involve different actors and

circumstances. Further, as discussed, some of the difficulty in parsing Holland's filings may be attributable to his disabilities. And Holland has been instructed that the Court will not consider allegations about individuals that are not parties to a particular case, no matter if Holland believes the information is "background" to his claims. With this warning, the Court expects him to comply with these guidelines in the future, and advises Holland that if he does not, it will strongly consider an injunction on filing. But as of now, the Court is not persuaded that Holland needs permission before filing a new suit.

## III.

In sum, the Court ADOPTS all three of Magistrate Judge Stafford's recommendations. (ECF Nos. 20, 23, 30.) Defendants' motion for judgment on the pleadings is GRANTED, and Holland's two motions to amend his complaint are DENIED. The case is dismissed, and a separate judgment will follow.

SO ORDERED.

Dated: January 31, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE